(131 P.3d 556)

No. 93,640

STATE OF KANSAS, *Appellee,* v. CHARLES ADAMS, *Appellant.*

Opinion filed April 7, 2006.

*Michelle Davis*, of Kansas Appellate Defender Office, for appellant.

*Tony Cruz*, assistant county attorney, and *Phill Kline*, attorney general, for appellee.

Before MCANANY, P.J., PIERRON and CAPLINGER, JJ.

MCANANY, J.: Charles Adams appeals his convictions for possession of cocaine, conspiracy to sell cocaine, attempted sale of cocaine, possession of hydromorphone, possession of marijuana, and two counts of possession of drug paraphernalia. Because the admission of hearsay testimony from an informant violated *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), and the Confrontation Clause to the Sixth Amendment to the United States Constitution, we reverse Adams' conviction for attempted sale of cocaine, set aside his sentence on that count, and remand for a new trial on that count. We affirm the remainder of Adams' convictions and his sentences.

Adams' first jury trial in January 2004 ended in a mistrial for reasons unrelated to this appeal. The retrial was held in August 2004. Officer Todd Godfrey of the Junction City Police Department testified for the State. On April 3, 2003, Godfrey was a detective with the Junction City-Geary County Drug Operations Group. Adams was the focus of their investigation. This was based on information from Frederic Green, a confidential informant, who told Godfrey that he had purchased crack cocaine from Adams in the past. Adams objected to this hearsay testimony. The trial court overruled the objection.

Godfrey testified that the police set up a buy/bust room at a local motel in order to catch Adams in the course of a drug deal. Green then placed a phone call to Adams while the police listened in and recorded the call. Godfrey overheard the conversation. In the call, Green asked Adams for "a bill" and stated that he was "stuck like Chuck, at the motel room and that he couldn't leave." Adams informed Green that he would be at the motel in about 10 minutes. Green told Godfrey that "a bill" meant $100 worth of crack cocaine.

When Adams failed to arrive at the motel, Green made two more calls to Adams. Godfrey was not personally present while Green made these calls. He could hear Green's side of the conversations

from an adjoining motel room, but not what Adams said to Green. Following the second call, Green told Godfrey that Adams would be there in about 5 minutes. After the third call, about 10 minutes later, Green told Godfrey that Adams was outside waiting for Green to come out. The police left the building, located Adams in a car with two other occupants, and arrested him.

Green did not testify at trial. Godfrey testified that Green could not be found and he believed Green was dead.

Adams contends that the trial court erred in admitting Green's hearsay statements contrary to the ruling in *Crawford.* He contends that this error denied him the right to confront his accuser. First we will examine this claim in the context of Adams' conviction for attempted sale of cocaine.

### *Confrontation Clause — Attempted Sale of Cocaine*

The Confrontation Clause of the Sixth Amendment to the United States Constitution states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."

When faced with a constitutional challenge to the admission of evidence, we apply the federal constitutional rule, under which an error is not harmless unless we are willing to declare beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial. *State v. Holmes*, 278 Kan. 603, 625, 102 P.3d 406 (2004).

In *Crawford,* the United States Supreme Court drew a distinction between testimonial and nontestimonial hearsay evidence. The Court held:

"Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as does *Roberts*, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford,* 541 U.S. at 68.

If an unavailable witness' out-of-court statement is testimonial in nature, it cannot be admitted into evidence unless the defendant

has had a prior opportunity to cross-examine the witness. Godfrey's recounting of Green's telephone conversation is clearly hearsay. Green was not available to testify. Thus, the issue turns on whether Green's statements were testimonial in nature.

While not providing a comprehensive definition of "testimonial" statements, the *Crawford* Court provided examples, historical and otherwise, that are instructive. Chief among them is one involving the use of an informant: the trial in 1603 of Sir Walter Raleigh for treason, in reaction to which the English right of confrontation was born. Lord Cobham, alleged to be Raleigh's accomplice in a treason plot, implicated Raleigh in statements to the Privy Council and in a letter, both of which were read to the jury at trial. Raleigh argued that Cobham lied to save himself and demanded that Cobham appear at trial and be subject to cross-examination. The court refused and Raleigh was convicted and condemned to death. 541 U.S. at 44.

The issue of an informant's testimony was considered in *United States v. Silva*, 380 F.3d 1018, 1020 (7th Cir. 2004), in which the court declared that testimony by the police recounting statements by a confidential informant are testimonial in nature, and without the testimony of the confidential informant they violate the Confrontation Clause. As noted in *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004):

"Indeed, the danger to a defendant might well be greater if the statement introduced at trial, without a right of confrontation, is a statement volunteered to police rather than a statement elicited through formalized police interrogation. One can imagine the temptation that someone who bears a grudge might have to volunteer to police, truthfully or not, information of the commission of a crime, especially when that person is assured he will not be subject to confrontation."

Here, Adams' statements which Godfrey overheard in Green's first telephone call to Adams are admissions that satisfy K.S.A. 60-460(g). Godfrey, who recounted them in his testimony, was available for cross-examination, so his testimony does not implicate *Crawford.* Further, and as argued by the State, to the extent that Green's statements to Godfrey are not offered to prove the truth of the matter asserted but merely to explain why Adams was the target of the investigation, they are not hearsay and their admission

does not violate *Crawford*. (We caution prosecutors that this is a close question, and our holding in this respect is not an open invitation to them to gild the lily in eliciting unnecessary and damning details to establish the motivation for the police investigation. Prosecutors do so at their peril. See *Silva*, 380 F.3d 1018.)

On the other hand, Godfrey was permitted to recount absent-witness Green's statements in his telephone calls to Adams. Green has never been available for cross-examination. Further, there was evidence of bad blood between Green and Adams. Green was specifically retained by the police because of his knowledge of drug deals and drug dealers. The whole point of Green's telephone call to Adams, which he knew the police were listening to, was to establish evidence with which to prosecute Adams. Green had every reason to believe that his statements made to Adams during the telephone conversations would be used against Adams at trial. Green's statements in his telephone conversations with Adams were testimonial in nature. They were offered for the truth of the matter asserted, *i.e.*, that Green offered to buy cocaine from Adams.

While in the proper context such a statement may be viewed as a verbal act, to which the hearsay rule does not apply, *State v. Smith*, 271 Kan. 666, 673, 24 P.3d 727, *cert. denied* 534 U.S. 1066 (2001), when a defendant is charged with an attempted sale of cocaine, K.S.A. 65-4161(a) requires a sales transaction that "encompasses such transactions as barter, exchange or gift, *or offer therefor.*" (Emphasis added). *State v. Griffin*, 221 Kan. 83, 84, 558 P.2d 90 (1976). There was no actual transaction since Adams was apprehended before it took place. However, there was an offer for such a transaction, and it came from Green. Obviously, this testimony was offered to satisfy an essential element of the crime of attempted sale of cocaine. Without it, there is no evidence of a proposed sales transaction which Adams could attempt to consummate. Without it, we have only Adams' statement that he was coming to the motel, a visit he says was for the purpose of beating up Green. Thus, Godfrey's testimony of Green's conversation with Adams violates *Crawford*, and we must set aside the attempted sale of cocaine conviction and remand for a retrial on this charge.

*Confrontation Clause — Conspiracy to Sell Cocaine*

Adams' conviction for conspiracy to sell cocaine is not dependent upon the admission of Green's hearsay statements. Unlike in the attempted sale of cocaine charge, the issue is not whether Green and Adams negotiated for the purchase and sale of cocaine. Rather, the issue is whether there was an agreement among coconspirators (Adams and someone other than Green) to commit a crime and an overt act in furtherance of the conspiracy. K.S.A. 21-3302; *State v. Daugherty*, 221 Kan. 612, 562 P.2d 42 (1977).

The jury had before it the statements of Green. As noted earlier in *Holmes*, we must determine whether we are willing to declare beyond a reasonable doubt that the admission of Green's statements contrary to *Crawford* had any likelihood of changing the result of the trial on this count. In other words, was there any reasonable likelihood that the jury could have erroneously concluded that the requirement of an overt act was satisfied by the phone call between Green and Adams?

We think not. The phone calls were initiated by Green, not Adams. It was the independent act of coming to the motel, not the prior phone calls, that supplied one of several possible overt acts. Adams admitted that he went to the motel to meet Green. He claimed he went there to fight Green. The jury obviously rejected this claim. Drugs and paraphernalia for selling drugs were found in the house occupied by Adams and Jasmine Davis. Drugs packaged for sale were found in the car. Substantial sums of cash were found on Adams and among his personal effects at his house. The video received in evidence showed a modus operandi for drug sales consistent with the events leading up to Adams' arrest. The K.S.A. 60-455 evidence was relevant to show Adams' plan. Even without Green's statements, the totality of the evidence supported the jury's conclusion that the reason for Adams going to the motel was to sell Green drugs, not fight him. The admission of Green's statements did not affect the outcome of the conspiracy to sell cocaine charge.

*Confrontation Clause — Possession of Cocaine, Possession of Hy-dromorphone, Possession of Marijuana, and Possession of Drug Paraphernalia*

Using the same analysis as in the preceding section, we are satisfied beyond a reasonable doubt that the admission of Green's statements was unlikely to change the results of the trial on these remaining counts. These charges arise from events that occurred after the police confronted Adams outside the motel. They are not dependent upon the prior exchanges between Godfrey and Green, or between Green and Adams. The admission of Green's statements did not adversely impact the outcome of these charges.

*K.S.A. 60-455 Evidence*

Adams claims the court erred in admitting his prior convictions for possession of marijuana and for the possession and sale of cocaine. We review this claim using the abuse of discretion standard. *Holmes,* 278 Kan. at 623.

Adams did not object at trial to the admission of his prior convictions. The court instructed the jury that this evidence was admitted solely to prove Adams' plan or intent and that the jury should not consider it in any other way. These are proper purposes for the admission of Adams' prior convictions when there is an issue whether he intended to exercise control over the controlled substances in question. See *State v. Faulkner,* 220 Kan. 153, 156, 551 P.2d 1247 (1976).

When the police first confronted Adams outside the motel, he was in the front passenger seat of an automobile driven by his girlfriend, Jasmine Davis. James Epps was in the back seat. The automobile was owned by Adams' mother. The police found the cell phone whose number Green had called earlier. Adams had $810 in cash on his person. A cigar box containing a baggie of marijuana was located on the console between Adams and Davis. A plastic baggie containing crack cocaine was found stuffed between the seat and the door in the back where Epps was sitting.

After the arrests, the police searched Davis' residence where they found clothing, shoes, a videotape, and personal effects of Adams indicating that he resided there with Davis. They also found

a bottle of Dilaudid pills which contain hydromorphone, along with baggies, a set of scales, some Zigzag rolling papers, a single-edged razor blade, a small pile of marijuana, a dish containing cocaine residue, and two rocks of cocaine. An issue at trial was Adams' intent to possess the illicit items found in the automobile and in Davis' residence.

In *State v. Likins*, 21 Kan. App. 2d 420, 903 P.2d 764, *rev. denied* 258 Kan. 861 (1995), marijuana and drug paraphernalia were found in a car occupied by the defendant and another person. The trial court admitted evidence of the defendant's prior conviction for possession of marijuana to prove the element of intent to possess the marijuana and drug paraphernalia. Since intent to possess was at issue, evidence of the defendant's prior marijuana conviction was relevant, and its probative value outweighed any prejudicial effect. Thus, the trial court did not abuse its discretion in admitting evidence of the conviction.

The analysis in *Likins* applies to Adams' claim. The trial court did not err in admitting the evidence of Adams' prior related convictions to prove Adams' plan or intent.

*Admission of Video*

Another item found in the Davis/Adams residence was a video which showed Adams engaging in what the police claimed to be a drug transaction over the telephone. Adams made a generic objection to the video and testimony about it. He now claims the court erred in admitting the video and testimony about it because it failed to consider their admissibility under K.S.A. 60-455. "A generic objection is insufficient to preserve the issue of the erroneous admission of evidence for appeal." *State v. Flynn*, 274 Kan. 473, 501, 55 P.3d 324 (2002). Nevertheless, the trial court would not have abused its discretion in overruling a more specific objection and admitting this evidence pursuant to K.S.A. 60-455 to show Adams' plan or modus operandi. See *State v. Rucker*, 267 Kan. 816, 828, 987 P.2d 1080 (1999).

*Motion for a New Trial*

Adams contends the trial court erred in denying his motion for new trial. We review this issue using the abuse of discretion standard. *Flynn*, 274 Kan. at 513.

Adams attempted to call Davis to testify at his trial. Since she was facing charges in another case, she invoked her Fifth Amendment right not to testify. Adams then requested that Davis' testimony from his first trial be read into evidence. The State objected, stating that if Davis did not testify it would be unable to impeach her testimony by showing that she was biased in favor of Adams as evidenced by her being charged with intimidating a witness in a case where Adams was charged with burglary. The court admitted into evidence a transcript of Davis' prior testimony along with a copy of the court file in the witness intimidation case against Davis. Adams' counsel not only failed to object to this procedure at the time, but stated, "Okay. I'll go along with that."

In his motion for new trial, Adams contended he was denied a fair trial because Davis' case file contained information indicating that Adams had committed a robbery and intimidated a witness, charges completely separate from the charges he faced at trial.

We fail to see how evidence of an unproven charge can be used to attack a witness' credibility by showing the witness' bias in favor of the defendant under either K.S.A. 60-421 or K.S.A. 60-420. See *State v. Martis*, 277 Kan. 267, 282, 83 P.3d 1216 (2004). Nevertheless, whatever file the court admitted into evidence does not appear to be a part of the record on appeal. Since Davis' file in the record contains an order dismissing the intimidation charges *after* Adams' trial, and since the file has no exhibit sticker, it does not appear to be the file that was admitted at trial. Further, there is absolutely no mention of Adams in this file. Separate and apart from this file, the record also contains an affidavit detailing the robbery allegedly committed by Adams in May 2004. However, Adams fails to demonstrate that this affidavit was admitted into evidence at trial. Adams has the affirmative duty to show in the record the error he attributes to the trial court. He has not done so. Under these circumstances, we find no abuse of discretion in the trial court's denial of Adams' motion for a new trial.

*Davis' Prior Testimony*

Adams has an additional complaint about the admission of Davis' prior testimony. He now claims this procedure violated his due

process rights. On the one hand, he claims that there was no guarantee that the jury actually read the transcript of Davis' testimony from the first trial during its deliberations. On the other hand, if they did read it in the jury room, he claims he had a constitutional right to be present during its reading. We review this constitutional challenge using the standards enunciated earlier from *Holmes*.

With respect to the alternative that the jury may not have read the transcript during its deliberations, Adams' sole authority is *Chambers v. Mississippi*, 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973). In *Chambers*, the defendant was denied the opportunity to attempt to impeach a defense witness based upon the Mississippi rule that one may not impeach one's own witness. As a result, he was prohibited from presenting an essential defense to the murder charge against him. The court found that due process requires that a defendant be able to confront and cross-examine witnesses who give testimony damaging to the defense.

Adams does not assert that he was denied the right to fully examine Davis. Further, Adams failed to object to the admission of Davis' testimony in this fashion. *State v. Kunellis*, 276 Kan. 461, 477, 78 P.3d 776 (2003). In fact, it was Adams' counsel who offered the transcript into evidence. He speculates that the jurors may not have read Davis' testimony in the jury room. If Davis' testimony had been read in open court, Adams could assert that the entire jury was asleep throughout the reading, resulting in the same complaint that he raises today. But without some proof in the record to support such a complaint, it would necessarily fail. Mere speculation does not carry the day. The jury had the duty to consider and weigh all the evidence in arriving at its verdict. We presume it did so absent evidence to the contrary.

With respect to the alternative that the jury read the transcript during deliberations and outside of Adams' presence, he relies upon *State v. Brockenshire*, 26 Kan. App. 2d 902, 995 P.2d 905, *rev. denied* 269 Kan. 935 (2000). In *Brockenshire*, the State offered into evidence a tape from a body wire worn by an informant during two marijuana purchases from the defendant. The tape was admitted into evidence even though the seal had been broken on the box which contained it and the testifying officer "assumed" the

tape in the box was the one obtained through the informant. The defendant's voice was never identified on the tape. The defendant's objection to a lack of foundation was overruled and the tape was admitted and later played in the jury room, but not in open court.

Unlike in *Brockenshire*, Adams was the one offering the evidence, not the State. He was not confronted with damning evidence which he could not rebut or comment upon. There was no issue about foundation or the accuracy of the transcript of Davis' testimony. (In *Brockenshire*, there was no determination before the tape was played in the jury room that it was even the defendant's voice that was recorded.) Adams knew what Davis said in the first trial and what the transcript contained. After all, it was Adams who called Davis to testify. His counsel not only acquiesced to the procedure of offering the transcript into evidence, but was the one who offered it as an exhibit. Knowing the details of Davis' prior testimony memorialized in the transcript, he had every opportunity to introduce other evidence bearing upon that testimony and to explain to the jury in closing argument its contents and significance. See *State v. Gholston*, 272 Kan. 601, 609, 35 P.3d 868 (2001), *cert denied* 536 U.S. 963 (2003).

We discourage the use of the procedure adopted by the trial court. The trial court should require that testimony presented in the form of a transcript be read to the jury in open court. While the trial court did not follow that procedure, under the facts peculiar to this case there was no violation of Adams' constitutional rights.

*Conspiracy to Sell Cocaine — Sufficiency of the Evidence*

In considering Adams' challenge to the sufficiency of the evidence to support his conviction for conspiracy to sell cocaine, we review the evidence in the light most favorable to the prosecution to determine if a rational factfinder could have found Adams guilty beyond a reasonable doubt. *State v. Calvin*, 279 Kan. 193, 198, 105 P.3d 710 (2005). A conviction of even the gravest offense may be sustained by circumstantial evidence. *Holmes*, 278 Kan. at 632.

As discussed earlier, the crime of conspiracy requires an agreement between two or more persons to commit or to assist in com-

mitting a crime, and an overt act in furtherance of the conspiracy committed by one or more of the conspirators. *Daugherty*, 221 Kan. at 619. The agreement element requires no particular formalities. A tacit understanding regarding the unlawful scheme will suffice. That understanding may be inferred from the facts and circumstances of the case. See *State v. Hernandez*, 24 Kan. App. 2d 285, 291, 944 P.2d 188, *rev. denied* 263 Kan. 888 (1997). The overt act element requires the showing of an act to effectuate the object of the conspiracy. *State v. Hill*, 252 Kan. 637, 642, 847 P.2d 1267 (1993).

Viewed in a light most favorable to the State, and disregarding the statements of the absent Green, rocks of crack cocaine and paraphernalia used in marketing this product were found in the house where Adams and Davis lived, along with $1,100 in cash found in a shoe which the State contended belonged to Adams. The police also found a video which showed Adams engaging in what appeared to be a drug transaction over the telephone. Adams was arrested with Davis and Epps in an automobile that contained rocks of cocaine packaged in the same manner as those found at the Davis/Adams residence. Adams had $810 in cash and Epps had $218 in cash when they were arrested. Adams admitted that he went to the motel to meet Green, though he denied the purpose was to sell drugs to Green. Davis testified (through the transcript of her testimony at the first trial) that she, Epps, and Adams went to meet Green for the purpose of engaging in a fight. Whether this testimony about the reason for meeting Green was credible was a matter for the jury, and the jury resolved that issue contrary to Adams. See *State v. Mays*, 277 Kan. 359, 363, 85 P.3d 1208 (2004).

It is apparent that the jury concluded that, at the minimum, Adams and Davis had an agreement to engage in the sale of cocaine and drove Adams' mother's car containing rocks of cocaine to meet a prospective customer to consummate a sale. There is substantial evidence of the elements necessary to support Adams' conviction of this charge.

*Possession of Contraband and Paraphernalia — Sufficiency of the Evidence*

As discussed above, we use the substantial evidence test in evaluating Adams' challenge to the sufficiency of the evidence to sup-

port his convictions for possession of cocaine, possession of hydromorphone, possession of marijuana, and two counts of possession of drug paraphernalia. Adams claims there was insufficient evidence to establish that he actually possessed the contraband or paraphernalia.

As noted earlier, Adams was not in exclusive possession of the car or house where these items were found. Therefore, there must be other incriminating circumstances linking Adams to the drugs, such as prior drug dealing, his proximity to the area where drugs were found, the proximity of his possessions to the drugs, and whether the drugs were in plain view. See *State v. Geddes*, 17 Kan. App. 2d 588, 591, 841 P.2d 1088 (1992), *rev. denied* 252 Kan. 1094 (1993). All of these factors are present here: Adams' prior drug convictions, the location of the marijuana on the console next to Adams and in plain view, the hydromorphone found in a medicine cabinet, drug paraphernalia found in the house he occupied with Davis, and the cocaine found in the house and in the automobile. While Adams had different explanations for this evidence, the jury found that testimony lacking in credibility.

The evidence was sufficient to establish that although Adams did not have exclusive possession of the contraband and paraphernalia, based upon his prior convictions, his proximity to the location where the drugs were found, and the proximity of his belongings to the drugs and paraphernalia, he knowingly and intentionally had control over them.

### Cumulative Error

Adams claims the trial court erred with respect to two additional issues which, when considered collectively, deprived him of a fair trial. We examine these claims to determine whether, under the totality of the circumstances, the collective effect of any such errors had the effect of denying Adams a fair trial. See *State v. Kirby*, 272 Kan. 1170, 1191-92, 39 P.3d 1 (2002).

### 1. Arrest Warrants

Officer Godfrey testified that the officers approached Adams' vehicle with their firearms drawn because Adams had an active Kansas Department of Corrections arrest and detain order and an

outstanding failure to appear warrant through Geary County. Similar testimony came from Officer Coffman. Adams did not object to this testimony. Without a timely objection, Adams has not preserved this issue for appeal. *Kunellis*, 276 Kan. at 477.

### 2. *Failure to Give Jury Instructions*

#### A. *Unanimity When Multiple Acts*

Adams next contends the trial court erred in failing to give a unanimity instruction. Adams did not request such an instruction. We will reverse only if the failure to so instruct was error and we are firmly convinced there is a real possibility that the jury would have rendered a different verdict if the error had not occurred. *State v. Shirley*, 277 Kan. 659, 666, 89 P.3d 649 (2004).

Adams was found guilty of possession of cocaine, possession of hydromorphone, two counts of possession of drug paraphernalia, and possession of marijuana. He claims error in the court's failure to provide a unanimity instruction only with respect to his convictions for possession of cocaine and possession of marijuana.

Adams presents a rather seductive argument to support this claim. He points out that the claimed multiple acts are Adams' possession of the drugs found in the car and his possession of the drugs found in the house he apparently shared with Davis. In such a situation the State can avoid a multiplicity problem by electing a particular act to rely on for a conviction. *State v. Johnson*, 33 Kan. App. 2d 490, 498, 106 P.3d 65 (2004). It failed to do so. Absent such an election, the salutary effect of a multiple acts instruction is to caution the jurors that they must unanimously agree on the specific act that constitutes an element of the crime charged, thereby avoiding the possibility of the jury finding Adams guilty of possession of illegal drugs based upon some jurors believing he possessed the drugs in the car and other jurors believing he possessed the drugs in the house. See *State v. Hill*, 271 Kan. 929, 26 P.3d 1267 (2001). The court gave no such instruction.

Incidents of claimed possession are factually separate if they occurred at distinctly different places and times. They are legally separate if Adams presented different defenses to them. Here, the jury was confronted with legally and factually separate incidents.

The drugs found by the police were separated both in time and distance from one another. Adams' defense was that he was unaware of the drugs found in the vehicle. The marijuana was found in the console between him and Davis. The cocaine was found stuffed between the door and the back seat where Epps sat. With respect to the drugs found in the house, his defense was that he did not live at Davis' residence. He claimed that he was no longer in a relationship with Davis at the time that drugs were found in the house and, therefore, had no connection to them.

Despite these factual and legal distinctions between the drugs in the car and the drugs in the house that require a unanimity instruction, there was no possibility of jury confusion.

Adams was also convicted of possession of hydromorphone. That drug was found in only one location: the medicine cabinet in the Davis/Adams house. Thus, there can be no multiplicity issue with respect to this conviction. Adams' defense to the hydromorphone charge was the same as to the other drugs: he did not reside in the house with Davis, and he and Davis had broken up long before these drugs were found. The jury either believed this defense or not. Having convicted Adams on the hydromorphone charge, they clearly rejected his defense and unanimously found that he did possess the drugs in the house. Since this was the same defense to the marijuana and cocaine charges, and since it is clear that the jury unanimously rejected this defense, there can be no doubt that the jury was unanimous in finding that Adams possessed the cocaine and marijuana located in the house. The fact that some but not all of the jurors may have also believed he had possession of the drugs in the car is immaterial, since the finding that he possessed the drugs in the house was unanimous.

There was no real possibility that the jury would have rendered a different verdict if a unanimity instruction had been given. Thus, while Adams' unanimity argument is facially appealing, it ultimately fails.

### B. Multiple Counts

Adams also contends the court failed to give a multiple counts instruction. He requested no such instruction at trial. A multiple

counts instruction avoids the jury being misled into believing that a finding of guilty on one count requires a finding of guilty on another. *State v. Gould*, 271 Kan. 394, 401, 23 P.3d 801 (2001). If a trial court should have given a multiple counts instruction but failed to do so, the error is harmless if the counts were distinguished on the verdict form and it was clear the jury weighed the evidence in reaching separate verdicts. *State v. Kelly*, 262 Kan. 755, 764, 942 P.2d 579 (1997).

Here, like the verdict form in *Gould*, the verdict form clearly indicated separate counts for each crime charged. The court gave separate instructions for each count, clearly delineating the elements for each crime charged. Under these circumstances, the court's failure to give a multiple counts instruction was not clearly erroneous.

Adams' claim of cumulative errors fails.

*Enhanced Sentence*

Adams contends the trial court erred by using his prior conviction for sale of cocaine to enhance his sentence for his convictions for conspiracy to sell cocaine and attempted sale of cocaine. Since we are reversing and remanding the attempt conviction, we will consider here only the conspiracy conviction.

Interpretation of a statute is a question of law over which our review is unlimited. *State v. Maass*, 275 Kan. 328, 330, 64 P.3d 382 (2003). The intent of the legislature governs if that intent can be ascertained. We presume that the legislature expressed its intent through the language of the statutory scheme it enacted. *Pieren-Abbott v. Kansas Dept. of Revenue*, 279 Kan. 83, 88, 106 P.3d 492 (2005). We construe the various provisions of an enactment together with the goal of achieving workable harmony between them, if that is possible. *State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas*, 275 Kan. 763, 768, 69 P.3d 1087 (2003).

Adams contends that since he was convicted of conspiracy to sell cocaine under K.S.A. 21-3302(a), rather than sale of cocaine under K.S.A. 65-4161, his prior conviction for sale of cocaine under K.S.A. 65-4161(a) cannot be used to enhance his sentence. He claims that since K.S.A. 21-3302 does not contain an enhanced

penalty provision, the penalty enhancement provision under K.S.A. 65-4161(b) cannot be used to enhance his sentenced since he did not specifically violate "this section."

The elements of a conspiracy crime are a combination of those elements contained in the conspiracy statute and those contained in the statute defining the substantive offense. See PIK Crim. 3d 55.01, 55.03. Thus, the charge against Adams of engaging in a conspiracy to sell cocaine involved both K.S.A. 21-3302, the conspiracy statute, and K.S.A. 65-4161(a), the substantiative criminal statute.

The conspiracy statute, K.S.A. 21-3302(d), states: "Conspiracy to commit a felony which prescribes a sentence on the drug grid shall reduce the prison term prescribed in the drug grid block for an underlying or completed crime by six months." Thus, the sentencing court must refer to the sentencing requirements in the statute for the substantive offense when determining the sentence for a conspiracy conviction. The severity level of a conspiracy crime is not set by the conspiracy statute but rather the statute containing the substantive offense, less 6 months.

In this case, Adams was convicted of conspiracy to sell cocaine. The conspiracy statute, K.S.A. 21-3302(d), is used in conjunction with K.S.A. 65-4161, the substantive criminal statute, to determine the severity level of Adams' sentence. K.S.A. 65-4161(b) states: "If any person who violates this section has one prior conviction under this section or a conviction for a substantially similar offense from another jurisdiction, then that person shall be guilty of a drug severity level 2 felony." Because Adams had a prior conviction for sale of cocaine under K.S.A. 65-4161, K.S.A. 65-4161(b) requires sentencing as a severity level 2 offense.

The trial court properly used Adams' prior conviction to classify his conspiracy to sell cocaine conviction as a severity level 2 offense.

*Apprendi*

Finally, Adams contends the trial court violated the rule in *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), when it increased the penalty for his possession of cocaine conviction without having first presented his prior conviction to a jury and proven it beyond a reasonable doubt. Adams

recognizes that this issue has been adversely decided by our Supreme Court in *State v. Ivory*, 273 Kan. 44, Syl., 41 P.3d 781 (2002). We are duty bound to follow Kansas Supreme Court precedent unless there is some indication that the court is departing from its previous position. *State v. Beck*, 32 Kan. App. 2d 784, 788, 88 P.3d 1233, *rev. denied* 278 Kan. 847 (2004). We see no such indication.

Conviction for attempted sale of cocaine is reversed, sentence is vacated, and case is remanded for retrial on that count. Convictions and sentences on the remaining counts are affirmed.

Affirmed in part, reversed in part, and remanded with directions.