NOT DESIGNATED FOR PUBLICATION

No. 118,136

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DENNIS JAMES BROCKENSHIRE,
*Appellant*.


MEMORANDUM OPINION

Appeal from Leavenworth District Court; GUNNAR SUNDBY, judge. Opinion filed November 16, 2018. Affirmed in part, reversed in part, and remanded with directions.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Todd Thompson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before MCANANY, P.J., PIERRON and LEBEN, JJ.


PER CURIAM: In this appeal, Dennis Brockenshire contends an unconstitutional search of his person uncovered evidence that led to his conviction of possession of marijuana. He argues that the district court should have suppressed the evidence from the search that was used to convict him and should not have permitted the introduction of other prejudicial and irrelevant testimony.

Brockenshire's encounter with the police began when the police received a report that a man in a tie-dye shirt was causing a disturbance by snorting cocaine off of the pool table at Tom's Country Stampede. There is some indication that the bartender may have

1

called in the report. Officers Noah Wooten and Sean Swisshelm were sent to the bar where they spotted Brockenshire wearing a tie-dyed shirt. Swisshelm asked Brockenshire to step outside where he explained to Brockenshire why they had been called to the bar. Brockenshire stated that someone was lying, but he agreed to be searched by the officers. Wooten searched Brockenshire but found no drugs, so he told Brockenshire he was free to go. Brockenshire returned to the bar.

When Wooten and Swisshelm reentered the bar a woman approached and said that when Brockenshire came back in, he put in his pocket a baggie he had picked up next to the pool table where the officers had first seen him and headed out the back door of the bar. Wooten followed Brockenshire out the back door while Swisshelm went out the front door to intercept him. Wooten radioed for assistance, and additional officers arrived and stopped Brockenshire in the parking lot. Altogether four officers confronted Brockenshire in the parking lot.

When he saw the police, and without being asked, Brockenshire stated that he had already been searched and volunteered that if they wanted to search him again they could. Wooten searched Brockenshire and found in his pocket a substance that turned out to be 1.24 grams of marijuana.

Before trial, Brockenshire moved to suppress the evidence obtained in this second search, arguing that the police lacked reasonable suspicion to seize him. He also argued that his consent to the search that followed was invalid. The district court refused to suppress this evidence.

Brockenshire also moved in limine before trial to exclude the admission of, or reference to, the statements made by the woman in the bar—that Brockenshire had placed a baggie in his pocket just before leaving the bar—and the statement made by the original tipster—that a person in the bar wearing a tie-dyed shirt was snorting cocaine off the pool

2

table. He claimed these statements were hearsay, improper K.S.A. 60-455 evidence, and violated the confrontation clause. The district court briefly took up Brockenshire's motion in limine at the beginning of the trial after jury selection and before the parties made their opening statements. The court denied Brockenshire's motion. Brockenshire also pointed out that after he was arrested the police found bags in the trash that field-tested positive for cocaine. The court ruled that evidence of cocaine being found in the trash was "nonprobative to the issue at hand" unless Brockenshire opened the door by contending that the police did not investigate to see if there actually was cocaine being used in the bar that night.

In the trial that followed, evidence was presented by Officers Wooten and Swisshelm and by a forensic scientist from the Kansas Bureau of Investigation who testified about the nature of the substance found in the search. After the jury found Brockenshire guilty of possession of 1.24 grams of marijuana, this appeal followed.

*Motion in Limine*

On appeal, Brockenshire first argues that the district court erred in denying his motion in limine and allowing into evidence the statements made by the two tipsters. We review the district court's decision on this motion for any abuse of discretion. *State v. Shadden*, 290 Kan. 803, 815, 235 P.3d 436 (2010). But we apply a different standard, which we set forth below, on the claimed error in ultimately admitting the evidence that was the subject of the motion.

*First Anonymous Tip*

Brockenshire argues that the district court erred in admitting the statement about the man in the tie-dyed shirt snorting cocaine. He argues that the statement was evidence

that Brockenshire had committed another crime or bad act and that the evidence was more prejudicial than probative.

Evidence of a prior crime or bad act is inadmissible to prove that the defendant has a propensity to commit the crime for which the defendant is now being tried or to show that the defendant is generally a bad person. See K.S.A. 2017 Supp. 60-455(a). But such evidence is admissible if it proves some other material fact such as the identity of the defendant or the relationship between the defendant and other parties, such as the police. See K.S.A. 2017 Supp. 60-455(b); *State v. Barber*, 302 Kan. 367, 374, 353 P.3d 1108 (2015); *State v. Gunby*, 282 Kan. 39, 56, 144 P.3d 647 (2006).

In evaluating this type of evidence, we first review de novo whether there is a material fact to be proven other than the propensity to commit crime. Then, applying the abuse of discretion standard, we consider whether the evidence of the prior bad act or crime tends to prove a disputed material fact in the case. Finally, we apply the abuse of discretion standard in determining whether the probative value of the evidence of the prior bad act or crime outweighs its prejudicial effect. See *Barber*, 302 Kan. at 374-75. If the State argues that admission of the evidence was harmless, we conduct a harmless error analysis as detailed in *State v. Longstaff*, 296 Kan. 884, 895, 299 P.3d 268 (2013). But here, the State does not contend that any error was harmless, so our analysis ends with consideration of the three issues enumerated in *Barber*.

The first item of testimony at issue here is the tip that a man wearing a tie-dyed shirt was snorting cocaine off of the pool table in the bar. The district court determined that the material fact to be established by this evidence was the relationship between the defendant and the police and the identity of the defendant. The district court concluded that this evidence was introduced to show how the police identified Brockenshire as a person of interest and why they engaged Brockenshire in the first place.

4

The State referred to this evidence in opening statement when the prosecutor said the officers went into the bar "on the reports that there was illegal substance being used in that bar and a man wearing a tie-died shirt was using those—was using that substance."

Officer Wooten, the State's first witness, testified: "We were called for an individual near the bar tables wearing a tie-dye shirt snorting lines of cocaine off of the pool table." Later in his direct examination, the prosecutor confirmed: "And you were called due to suspicion of cocaine from a person wearing a tie-dyed shirt is what you just testified; is that correct?" Wooten responded in the affirmative.

The State also called Officer Swisshelm to testify. He stated that he was called to the bar when the bartender identified a man in a tie-dyed shirt was causing a disturbance. The disturbance was using "lines of cocaine or something." Swisshelm later testified that the bartender "had not actually witnessed Mr. Brockenshire doing lines of cocaine off the pool table." But on cross-examination he repeated that "a gentlemen in a tie-dyed shirt was reportedly doing lines of cocaine off the pool table." Swisshelm stated, "I looked over at the pool table, and I saw the white powdery substance."

In closing argument, the State argued the officers were called "due to—as Officer Swisshelm said was a disturbance, and they were called to investigate a case. A crime. And they were called because they had heard a man with a tie-dyed shirt had some type of illegal substance."

Here, this district court correctly found that the evidence about cocaine was not hearsay as Brockenshire contended because it was not offered to prove the truth of the matter asserted. Hearsay is "[e]vidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated." K.S.A. 2017 Supp. 60-460. If statements "are not offered to prove the truth of the matter asserted but merely to explain why [the defendant] was the target of the investigation,

5

[the statements] are not hearsay." *State v. Adams*, 35 Kan. App. 2d. 439, 443-44, 131 P.3d 556 (2006).

But there is a serious issue about whether the court should have excluded this evidence because its prejudicial effect substantially outweighed its probative value.

Officer Swisshelm testified that they were called to the bar to check out a disturbance. That would have been enough to establish why the police were at the bar in the first place and why they singled out Brockenshire—the man in the tie-dyed shirt—as the subject of their investigation. But the State interjected the subject of cocaine into the case when there was no need to do so. How did the testimony that the man in the tie-dyed shirt was snorting cocaine off the pool table tend to prove the issue before the jury: whether Brockenshire possessed marijuana? It did not. This testimony, which went beyond the fact that the police were investigating a disturbance, was superfluous in establishing why the police were at the bar that night and why Brockenshire was the focus of their investigation. This evidence had minimal, if any, probative value. On the other side of the scale, this testimony tended to characterize Brockenshire as a druggie now on trial for a drug crime. Its prejudicial effect far outweighed its probative value, and it should not have been admitted into evidence at trial.

The district court erred in denying Brockenshire's motion in limine with respect to this testimony and in admitting this testimony at trial.

*Violation of District Court's Order in Limine*

Brockenshire next asserts that Officer Swisshelm violated the district court's order in limine by talking about the white substance that was on the pool table. In ruling on Brockenshire's motion in limine, the district court directed the State not to introduce evidence about the bags that were found at the bar that tested positive for cocaine or other

6

investigation that the officers conducted in relation to cocaine unless the door was opened or the officer's failure to investigate was called into question.

After questioning Officer Swisshelm about why he was interested in Brockenshire, defense counsel asked Swisshelm, "Once you were directed towards Mr. Brockenshire, were you watching him the entire time?" Swisshelm's nonresponsive answer was, "I looked over at the pool table, and I saw the white powdery substance." Officer Swisshelm was cutoff before he could finish his statement.

While Swisshelm did not explicitly identify the white powder on the pool table as cocaine, we do not characterize the jurors who heard this testimony as having fallen off the turnip wagon yesterday. Taken together with the earlier testimony that the officers were at the bar because of a report that an individual was snorting cocaine off the pool table, this testimony interjected into the trial police testimony that a juror would take as confirmation that Brockenshire had been snorting cocaine off the pool table. This testimony was not stricken from the record, and the jury was not given an admonition to disregard it. This volunteered and nonresponsive testimony from Swisshelm violated the district court's order in limine and compounded the effect of the improper admission of K.S.A. 60-455 evidence.

*Second Anonymous Tip*

This claim relates to the unidentified woman in the bar who told the officers that she saw Brockenshire put a baggie in his pocket and head for the back door. Swisshelm recounted this statement for the jury in his testimony at trial. Brockenshire contends that this statement was hearsay. In the course of his testimony, Swisshelm also testified that the woman said she believed the baggie Brockenshire put into his pocket before leaving the bar contained narcotics. The court properly sustained an objection to this last comment. But the court properly permitted Swisshelm's recounting of the woman's other

7

statement because it was not introduced to prove that Brockenshire put some illegal substance in his pocket as he left the bar, but rather to explain why Swisshelm followed him outside. This testimony was not hearsay. See *Adams*, 35 Kan. App. 2d. at 443-44.

Brockenshire also contends that admission of this unidentified woman's statement at trial violated his rights under the Confrontation Clause of the Sixth Amendment of the United States Constitution. We review de novo whether the district court's decision to admit this evidence violated Brockenshire's right under the Sixth Amendment to confront the witnesses against him. See *State v. Williams*, 306 Kan. 175, 181, 392 P.3d 1267 (2017).

The Confrontation Clause applies exclusively to testimonial statements. It prohibits the admission of testimonial statements by a witness who did not appear at trial unless the witness was unavailable to testify *and* the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 59, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Here, Brockenshire had no opportunity to interrogate this unidentified woman before trial, so the issue turns on whether her statement was testimonial.

In determining whether a statement is testimonial in nature we consider the following factors:

> "(1) Would an objective witness reasonably believe such a statement would later be available for use in the prosecution of a crime?
> "(2) Was the statement made to a law enforcement officer or to another government official?
> "(3) Was proof of facts potentially relevant to a later prosecution of a crime the primary purpose of the interview when viewed from an objective totality of the circumstances, including circumstances of whether

8

(a) the declarant was speaking about events as they were actually happening, instead of describing past events;

(b) the statement was made while the declarant was in immediate danger, *i.e.,* during an ongoing emergency;

(c) the statement was made in order to resolve an emergency or simply to learn what had happened in the past; and

(d) the interview was part of a governmental investigation; and

"(4) Was the level of formality of the statement sufficient to make it inherently testimonial; *e.g.,* was the statement made in response to questions, was the statement recorded, was the declarant removed from third parties, or was the interview conducted in a formal setting such as in a governmental building?" *State v. Brown*, 285 Kan. 261, 291, 173 P.3d 612 (2007).

Here, the statement by this unknown woman was made to Swisshelm, a law enforcement officer. It was made to report what she perceived to be a potential crime. A reasonable person would likely believe that such a statement would later be used in the prosecution of a crime. Thus the first two factors would weigh in favor of the statement being testimonial in nature.

The statement was made while the event was still ongoing. It was made while Brockenshire was leaving the bar. But there is no indication this woman was in any danger. Her statement was unprompted and not a part of a police investigation or interview. There was no formality to the conversation. Thus the third and fourth factors weigh in favor of the statement not being testimonial.

Considering these factors as a whole, the unknown woman's statement was not testimonial, and introducing it into evidence did not violate Brockenshire's right to confront the witnesses against him. The district court did not err in overruling Brockenshire's motion in limine with respect to this testimony and in allowing this testimony at trial.

*Motion to Suppress*

Brockenshire claims the district court erred in failing to suppress the evidence gathered during his second confrontation with police. He claims that both the search and the seizure were unconstitutional.

"'An appellate court generally reviews a trial court's decision on a motion to suppress using a bifurcated standard. The trial court's findings are first reviewed to determine whether they are supported by substantial competent evidence. Appellate courts do not reweigh the evidence, assess the credibility of the witnesses, or resolve conflicting evidence. The ultimate legal conclusion regarding the suppression of evidence is then reviewed de novo. If the material facts in a trial court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. [Citation omitted.]'" *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016) (quoting *State v. Martinez*, 296 Kan. 482, 485, 293 P.3d 718 [2013]).

The State bears the burden of proving the validity of a search and seizure. *State v. Overman*, 301 Kan. 704, 710, 348 P.3d 516 (2015).

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." Section 15 of the Kansas Constitution Bill of Rights provides identical protection to the Fourth Amendment. *State v. Moralez*, 297 Kan. 397, 404, 300 P.3d 1090 (2013).

Brockenshire first argues that the officers illegally seized his person. He was seized if a law enforcement officer restrained him with physical force or if, under the totality of the circumstances, a reasonable person in Brockenshire's situation would not have felt free to leave. See 297 Kan. at 404. But Brockenshire was not seized if he

voluntarily encountered the officer and, under the totality of the circumstances, reasonably believed that he was free to terminate the encounter at any time. See *State v. Murphy*, 296 Kan. 490, 492, 293 P.3d 703 (2013).

Under *State v. McGinnis*, 290 Kan. 547, 552-53, 233 P.3d 246 (2010), an encounter does not turn into a seizure merely because an officer approaches a person and asks a question. But a voluntary encounter can turn into a seizure when considering factors such as "the presence of more than one officer, the display of a weapon, physical contact by the officer, use of commanding tone of voice, activation of sirens or flashers, a command to halt or to approach, and an attempt to control the ability to flee." 290 Kan. at 553.

Here, Brockenshire was attempting to leave the bar when he confronted four officers in the parking lot. The State, the party bearing the burden to prove its claim that there was no seizure, does not establish the position of the officers, whether they or their police cars blocked Brockenshire's exit, whether police sirens or flashers had been activated, the tone of voice of any of the officers or what they said, or whether any guns were drawn. Taken as a whole, the evidence we do have supports a finding that Brockenshire was seized and that a reasonable person would not have felt free to leave under the circumstances.

Brockenshire's initial seizure was not a formal arrest but merely an investigatory stop and a prelude to Brockenshire's actual arrest. See *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

The reasonableness of an investigatory stop is determined by (1) whether the law enforcement office's action was justified at its inception and (2) whether it was reasonably related in scope and time to the justification for the stop. 392 U.S. at 19-20. An officer's investigatory stop is justified at its inception if the officer has a reasonable

11

and articulable suspicion that criminal activity is afoot. *State v. Smith*, 286 Kan. 402, 407, 184 P.3d 890 (2008). Brockenshire claims that the officers lacked reasonable suspicion that criminal activity was afoot.

Reasonable suspicion is measured under a totality of the circumstances and is viewed with deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances. Reasonable suspicion requires a minimum level of objective justification. It is a less demanding standard than probable cause and is considerably less than proof by a preponderance of the evidence. *State v. DeMarco*, 263 Kan. 727, 734-35, 952 P.2d 1276 (1998).

Here, the officers were at the bar to investigate a tip about illegal drug use by a person readily identified as Brockenshire. After an initial search of Brockenshire, the officers received a tip from a woman in the bar that the man they had just questioned stuck a plastic baggy in his pocket and was trying to leave. Officer Swisshelm, who had training and experience with illegal drugs, testified that the woman said that Brockenshire "had gone back over to where we originally contacted him and had pocketed an item near the pool table." Officer Wooten, a K-9 officer trained in narcotics detection and a field training officer himself, knew how drugs were stored and transported. At that point he had a reasonable and articulable suspicion that the baggie Brockenshire put in his pocket may have contained drugs. Giving reasonable deference to the officers' training and experience, the officers had a reasonable and articulable suspicion that criminal activity was afoot. Moreover, the investigatory stop was brief and lasted only long enough to check out the large bulge in the right coin pocket of Brockenshire's pants before the investigatory stop turned into an arrest.

As a final point, Brockenshire argues that there was no justification for the warrantless search because any consent he gave for the search was equivocal and not freely given, but rather a result of duress and coercion.

12

Subject to a few specific and well-delineated exceptions, a search without a warrant is per se unreasonable and unlawful. *State v. Thompson*, 284 Kan. 763, 776, 166 P.3d 1015 (2007). One exception to the warrant requirement is when the suspect consents to the search. 284 Kan. at 776.

To establish valid consent the State must show (1) clear and positive testimony that consent was unequivocal, specific, and freely given; and (2) the absence of duress or coercion, express or implied. *State v. James*, 301 Kan. 898, 909, 349 P.3d 457 (2015).

Whether consent is voluntary or the result of duress or coercion is a question of fact that is to be determined considering the totality of the circumstances. *State v. Spagnola*, 295 Kan. 1098, 1107, 289 P.3d 68 (2012). The same factors for determining whether the encounter was voluntary apply to determining whether the consent was voluntary. 295 Kan. at 1108; see *McGinnis*, 290 Kan. at 552-53. Additional factors that may be considered include: the length of the detention, whether the suspect was informed of his constitutional rights, whether the suspect was subject to repeated or prolonged questioning, whether the police detained the suspect's property, and whether the suspect was threatened with or subject to physical punishment such as deprivation of food or sleep. See *Schneckiloth v. Bustamonte*, 412 U.S. 218, 226, 93 S. Ct. 2041, 36 L. Ed. 854 (1973).

At the time of the second stop, and before the officers had the opportunity to inform Brockenshire of his constitutional rights or ask him any questions, Brockenshire immediately volunteered to have the officers search him again. The officers had not touched Brockenshire or physically restrained him. After Brockenshire consented to this second search, Officer Wooten told him why they were contacting him again. Brockenshire never indicated that he was withdrawing his consent to the search, but instead tried to explain what the officer was about to find. He stated that if there was

13

something in his pocket it was there because someone had planted it on him. Thus, it was apparent to Brockenshire that the officer would be searching his pocket. Brockenshire's consent was unequivocal and specific enough to allow the search of his person, and his consent was not coerced.

Finally, the search itself was very brief. Officer Wooten had noticed a lump in Brockenshire's pocket and gave it a quick pat-down before reaching in and pulling out the plastic baggy of marijuana.

The district court did not err by denying Brockenshire's motion to suppress. But the admission of prejudicial testimony that far outweighed any probative value denied Brockenshire a fair trial and requires us to reverse his conviction and remand for a new trial.

Affirmed in part, reversed in part, and remanded for a new trial.