(144 P.3d 66)

No. 94,831

STATE OF KANSAS, *Appellee,* v. PREVIN J. ARAUJO, *Appellant.*

Opinion filed October 20, 2006.

*Shawn Minihan,* of Kansas Appellate Defender Office, for appellant.

*Lesley A. Isherwood,* assistant district attorney, *Nola Tedesco Foulston,* district attorney, and *Phill Kline,* attorney general, for appellee.

Before RULON, C.J., MALONE and HILL, JJ.

HILL, J.: We consider here the admission of out-of-court statements given to two police officers responding to a 911 emergency call. James Lewis told two Wichita police officers that he had made the 911 call because the defendant, who usually carried weapons, had threatened him. At the defendant's trial for possession of drugs, found near his person when he arrived at the scene after the officers, the trial court admitted Lewis' statements in order to explain why the police officers approached the defendant with caution. Because the statements from Lewis to the police officers were not testimonial, their admission did not violate the rule in *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), the Confrontation Clause in the Sixth Amendment to the United States Constitution, or §10 of the Kansas Constitution Bill of Rights. Because they were not admitted for the truth of the matter asserted, they are not hearsay. We therefore affirm the convictions of the defendant.

### *Background Facts and Prior Proceedings*

This case did not start out as a drug investigation. Wichita Police Officers Drew Seiler and William Crowe were dispatched to James Lewis' residence in response to a 911 call. The caller's purpose was unclear. Upon arriving at the residence, they spoke to Lewis who identified himself as the one who made the 911 call.

At the scene Lewis told the officers that he contacted 911 for protection. Officer Seiler testified that Lewis stated "a black male, who [Lewis] knew as PJ, was threatening him." Lewis told Officer Crowe that PJ threatened to "kick [Lewis'] butt" over some gold rings. Then, while Officer Crowe continued to converse with Lewis regarding the threat, Officer Seiler examined their surroundings to ensure their safety. Therefore, Seiler only heard "bits and pieces" of their conversation.

When Seiler noticed a picture of a black male hanging on the wall, he showed Lewis the picture and asked him if this person was PJ. Lewis said yes. Both officers also testified that Lewis informed them that PJ generally carried weapons. Additionally, Officer Crowe stated that Lewis told both of them that PJ was Tracy Drake's boyfriend. Drake was another resident at the house.

Shortly afterwards, a vehicle pulled into the driveway, which Officer Seiler recognized as belonging to Tracy Drake. Drake got out of her car and walked towards the residence; when she saw the police in the house, she turned to return to her vehicle. But Officer Seiler went outside and commanded Drake to stop so he could speak with her. Officer Crowe remained inside the house with Lewis.

As Drake turned around, Seiler noticed a black male passenger inside the vehicle. Seiler shined his flashlight onto the vehicle's front windshield and observed the passenger placing his hands into his pockets. Without questioning Drake, Seiler focused his attention on the passenger. As Seiler approached the vehicle, he recognized the passenger as being the man identified in the picture as PJ.

Officer Seiler ordered the passenger to show his hands because of Lewis' statement that PJ carried weapons. The passenger first complied but later reached into his pockets and under his seat. Seiler eventually pointed the gun at the passenger and ordered him to keep his hands visible. Seiler radioed for assistance. When help arrived, Seiler asked the passenger to step out of the vehicle. Seiler patted the passenger for weapons. Seiler then looked inside the vehicle's interior and saw a plastic bag of marijuana.

As a result, the officers arrested the passenger for possession of marijuana. Seiler also reached under the passenger's seat to look for a weapon, and, instead, discovered a plastic bag of crack cocaine. The officers then asked the passenger for his name. The passenger responded that his name was Jared L. Araujo. However, because the physical description for Jared did not match the passenger, Seiler used the passenger's tattoos to determine that his true identity was Previn J. Araujo. Officer Seiler later discovered two felony warrants had been issued against Araujo and arrested him for those warrants.

### The Trial

On April 13, 2005, the district court held a bench trial to determine whether Araujo was guilty of six drug charges. Lewis was not

present at the hearing. During the trial, both officers testified about what Lewis had told them in the house.

The defendant objected to both officers' testimony based on hearsay grounds and Lewis' absence, despite being under subpoena. The defendant first objected to the testimony after Seiler had substantially completed testifying on direct. The court overruled the delayed objection, ruling that even though Lewis' statements were hearsay, "they're admissible to show this officer's behavior, and they go to the probable cause for talking with [Araujo]." The defendant's second objection to Lewis' statements occurred during Crowe's testimony, which the court also overruled for similar reasons.

Based, in part, on Lewis' statements, the court held that Seiler had probable cause to detain and, subsequently, investigate Araujo. Accordingly, the court convicted Araujo on possession of marijuana with the intent to sell, possession of cocaine, possession of methamphetamine, and three drug tax stamp violations.

### Issues on Appeal

We must first deal with the State's contention that Araujo has failed to preserve this issue for appeal by failing to lodge a timely or accurate objection. The State also asserts that Araujo is arguing a different objection on appeal than what was asserted at the trial and cannot raise new issues before an appellate court. Next we examine the statements of Lewis and decide if they are testimonial and therefore inadmissible according to the law of the Sixth Amendment to the United States Constitution, § 10 of the Kansas Constitution Bill of Rights, and *Crawford*. The appellant argues they are; the State contends the contrary is true.

#### Is the issue preserved?

Our rules concerning the preservation of appeal issues are longstanding and straightforward. If you wish to appeal an erroneous admission of evidence, you must first object at trial. "[A] timely and specific objection for the admission of evidence is necessary to preserve the issue for appeal. [Citation omitted.]" *State v. Torres*, 280 Kan. 309, 319, 121 P.3d 429 (2005); accord K.S.A. 60-404.

Even in an asserted Confrontation Clause violation, a defendant's failure to timely object to out-of-court statements precludes the appellate courts from reviewing the issue. *State v. Mays*, 277 Kan. 359, 384-85, 85 P.3d 1028 (2004). In addition, a party may not object at trial to the admission of evidence on one ground and then on appeal argue a different ground. *State v. Engelhardt*, 280 Kan. 113, 127, 119 P.3d 1148 (2005).

Here, the record demonstrates that Araujo objected to Lewis' statements after Officer Seiler had almost completed testifying on direct but before cross-examination. Araujo based his objection on his "understanding [Lewis] was under subpoena. However, it's also [his] understanding that [Lewis was] not present and that all of these statements are hearsay."

With this in mind, the State first argues that Araujo's objection was untimely. But we have been instructed that such decisions are not made in a vacuum:

"[K.S.A. 60-404] is intended to prevent reversals for improper admission of evidence unless a specific objection is made *at the time* the evidence is introduced. It does not, however, operate in a vacuum and has been relaxed to fit trial situations, such as where the objectionable matter isn't readily apparent or *in a trial to the court rather than to a jury*." (Emphasis added.) *State v. Parson*, 226 Kan. 491, 493, 601 P.2d 680 (1979) (involving a bench trial).

This was a bench trial. Araujo could have been quicker in objecting, but he did make an objection. The judge, acting here as finder of fact, could have disregarded the statements had he chosen to sustain the objection. Accordingly, we hold the objection was timely.

Next, the State argues that the defendant limited his objection to hearsay and thus, the defendant's asserted Confrontation Clause issue is not proper for the appellate court to review. Prior to *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), the court ruled that a hearsay objection was not sufficient to preserve a Confrontation Clause claim for appeal. *State v. Bryant*, 272 Kan. 1204, 1208, 38 P.3d 661 (2002).

Post-*Crawford*, it does not appear that the court has addressed this issue again. But since *Crawford*, the court has considered the merits of a confrontation issue even though the defendant failed

to make any objection at trial. *State v. Corbett*, 281 Kan. 294, 308-09, 130 P.3d 1179 (2006) (ruling that the hearsay statements were not testimonial and that the defendant failed to preserve this issue for appeal).

Finally, there are three exceptions to the general rule that a matter not presented to the lower court will not be considered on appeal: (1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground or assignment of a wrong reason for its decision. *State v. Schroeder*, 279 Kan. 104, 116, 105 P.3d 1237 (2005).

It is very clear that this is an issue of law arising from admitted facts and is determinative of the case. If the statements are testimonial, then they are not admissible. If they are not testimonial, then they are admissible. Therefore, we will consider the issue.

### *Are the statements to the officers testimonial?*

Araujo asserts that Lewis' statements were "testimonial because they were made in contemplation of a criminal proceeding" and made during a police interrogation. Therefore he was not allowed to confront the witness at his trial nor was he permitted to cross-examine him.

"The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him or her." *State v. Meeks*, 277 Kan. 609, 613, 88 P.3d 789 (2004).

" 'An error of constitutional magnitude is serious and may not be held to be harmless unless the appellate court is willing to declare a belief that it was harmless beyond a reasonable doubt. Thus, before an appellate court may declare the error harmless, it must be able to declare beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial.' [Citation omitted.]" *State v. Brown*, 280 Kan. 65, 77, 118 P.3d 1273 (2005).

In *Crawford*, the United States Supreme Court evaluated how the Sixth Amendment protections applied to out-of-court state-

ments against the accused in criminal trials. *Crawford* rejected the proposal that testimonial hearsay should be left to the rules of evidence in regulating whether the accused had a right to confrontation. Instead, the Court held that "[w]here testimonial evidence is at issue[,] . . . the Sixth Amendment demands . . . unavailability and a prior opportunity for cross-examination." 541 U.S. at 68.

On the other side, the State asserts that Lewis' statements were not testimonial and, thus, did not require unavailability and a prior opportunity for cross-examination to be admitted into evidence. The State contends that it did not offer Lewis' statements to prove the truth of the matter asserted. Instead, the State offered Lewis' statements merely to explain why Officer Seiler detained Araujo in the vehicle. Therefore, because they were used to establish the course of investigation and "not to 'bear witness' in contemplation of legal proceedings," the State requests the court to affirm the defendant's convictions.

The State cites *State v. Adams*, 35 Kan. App. 2d 439, 131 P.3d 556 (2006), to support its contention that the district court's admission did not violate *Crawford*. *Adams* noted that *Crawford*'s distinction rested on whether the absent witness' statements were testimonial or nontestimonial. *Adams* held that hearsay statements are testimonial in nature when offered to establish an essential element of a crime. If the hearsay statements are "not offered to prove the truth of the matter asserted but merely to explain why [the defendant] was the target of the investigation, [then the statements] are not hearsay and their admission does not violate *Crawford*." 35 Kan. App. 2d at 443-44. We find the reasoning of *Adams* to be persuasive.

Certainly the statements of Lewis communicated only a threat of violence and a possibility of possessing weapons. There was no suggestion of drug possession or other illegal activity. Such statements, given to a rational police officer, would naturally make the officers cautious when approaching someone so described. Furthermore, it is clear that Lewis' statements were not offered for the truth of the matter asserted and are not hearsay.

*Crawford* states: "The Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." 541 U.S. at 60 n.9. Because the statements were not presented to prove the truth of the matter, *Crawford* does not apply and Araujo's argument fails.

Having said that, in light of further refinements in the *Crawford* rule, found in *Davis v. Washington*, 547 U.S. 813, 165 L. Ed. 2d 224, 126 S. Ct. 2266 (2006), we believe the statements would not be testimonial even if they were offered for the truth of the matter asserted. (Note: *Davis v. Washington* involves two separate lower court cases: *Davis v. Washington* and *Hammon v. Indiana*.)

In *Davis*, the out-of-court statements were made to a 911 emergency operator. The victim told the operator that Davis had hit her and was leaving the scene. The police arrived soon after the 911 call and observed the victim's shaken state, conduct, and injuries. At trial, the officers who responded to the 911 call were the State's only witnesses. The trial court admitted the 911 recording over Davis' objection that it violated his confrontation rights. The Washington Supreme Court affirmed the trial court's decision, holding that the 911 conversation identifying Davis was not testimonial.

In *Hammon*, the out-of-court statements were made to the officers at the victim's home. The police responded to a reported domestic disturbance at the victim and defendant's home. The victim told the officers that " ' "nothing was the matter." ' " The victim, however, gave the officers permission to enter the household, where the police continued to question the victim and the defendant in separate rooms. The victim eventually handwrote and signed a battery affidavit detailing the defendant's abusive conduct.

At trial, the victim did not appear in court. Instead, the officer authenticated the victim's battery affidavit and testified about the victim's statements. The defendant repeatedly objected. The Indiana Supreme Court held that the victim's battery affidavit was testimonial but found its admission was harmless beyond a reasonable doubt mainly because the trial was to the court. As to the officer's testimony, the court held that the victim's statements were not testimonial.

The United States Supreme Court evaluated both state cases to determine whether the statements were " ' "testimonial" ' " as " 'statements taken by police officers in the course of interrogations.' " 547 Kan. at 822.

In its examination of this issue, the Court held:

"Statements are *nontestimonial* when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are *testimonial* when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." (Emphasis added.) 547 U.S. at 822.

Using this rule, the Court compared *Davis* and *Hammon* to *Crawford* in four instances, using *Crawford* as the standard for deciding if statements are testimonial. 547 U.S. at 822, 826-27, 830. These four instances give guidance about what circumstances would constitute an ongoing emergency to produce a nontestimonial statement.

Present Events. The declarant's hearsay statements must be about present events. For example, the Court noted that the declarant in *Davis* "was speaking about events *as they were actually happening*, rather than 'describ[ing] past events.' [Citation omitted.]" 547 U.S. at 827. Contrary to *Davis*, the Court observed that the police in *Hammon* and *Crawford* sought to determine " 'what happened' " rather than " 'what is happening.' " 547 U.S. at 830.

Immediate Danger. The declarant must make these statements while in immediate danger. The Court noted that the declarant in *Davis* was seeking aid from 911 in response to a bona fide physical threat. The Court, however, observed in *Hammon* that no immediate danger existed because the officers testified that they did not hear any disturbances coming from the house upon arrival and that the declarant stated things were fine. The Court stated that in *Crawford* there was no immediate threat of danger since the interrogation took place hours after the events had occurred. *Davis*, 547 U.S. at 829-30.

Emergency Purpose. The police must use these statements to determine the need for emergency assistance; if the emergency has ended, the purpose has been achieved and the interrogation may evolve into producing testimonial statements. In *Davis*, the police used the out-of-court identification statements to resolve a present emergency. In *Hammon*, the obtained statements' purpose was not to resolve an emergency since the threat to the victim had ended. In *Crawford*, the police elicited statements to learn about a past emergency. See *Davis*, 547 U.S. at 828-30.

The *Davis* Court also noted that investigating officers' initial inquiries to identify whom they are dealing with may produce nontestimonial statements if it is made " 'in order to assess the situation, the threat to their own safety, and possible danger to the potential victim.' [Citation omitted.]" 547 U.S. at 832.

Formality of Interrogation. The *Davis* Court distinguished the formality between *Davis* (911 call), *Hammon* (interrogation in victim's house in a separate room from defendant), and *Crawford* (station house interrogation) as having an influence in determining whether or not the statement is testimonial. Specifically, the Court noted that *Crawford* and *Hammon*'s similarity in that both statements took place over a period of time after the described events had occurred were inherently testimonial. In contrast, *Davis*' victim's frantic answers to the 911 operator leaned towards being nontestimonial. See 547 U.S. at 830.

In this case, Lewis' statements pertained to present events. Lewis informed the officers that he called 911 for police assistance because PJ "was threatening him." Additionally, the purpose behind the officers' initial inquiries was to determine if Lewis indeed needed police assistance. But, once Drake's vehicle arrived at the house, a conceivable threat existed and Officer Seiler relied on Lewis' statements to assess whether PJ was a threat to anyone's safety. In evaluating these circumstances, it appears that the officers' primary purpose in using Lewis' statements was to make a threat assessment in order to meet an emergency that was in progress when the defendant arrived on the scene. Consequently, we

consider Lewis' statements nontestimonial. That means, in turn, they were admissible.

Affirmed.