No. 94,831

STATE OF KANSAS, *Appellee,* v. PREVIN J. ARAUJO, *Appellant.*

(169 P.3d 1123)

Opinion filed November 2, 2007.

*Shawn E. Minihan,* of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellant.

*Lesley A. Isherwood,* assistant district attorney, argued the cause, and *Nola Tedesco Foulston,* district attorney, and *Phill Kline,* attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: Previn J. Araujo seeks reversal of his conviction, arguing the trial court erroneously admitted out-of-court statements given to police officers during a 911 call and during the investigation prompted by the call. Araujo argues admission of these statements violated the Confrontation Clauses of the Sixth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights.

Citing *Crawford v. Washington,* 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004), and *Davis v. Washington,* 547 U.S. 813, 165 L. Ed. 2d 224, 126 S. Ct. 2266 (2006), Araujo argues that the State is barred from using testimonial out-of-court statements against a criminal defendant unless the declarant is unavailable and the accused has had a prior opportunity to cross-examine the declarant. He suggests that statements made to officers in the course of an investigation are testimonial.

We do not reach the issue of whether statements made to officers receiving and responding to a 911 call are testimonial however,

because, in this case, the trial court admitted the statements for the limited nonhearsay purpose of explaining the officers' actions of approaching the defendant, who was believed to be the suspect in the assault reported by the 911 caller. This interaction led to the discovery of drugs and to Araujo's arrest and conviction on drug charges. Because the out-of-court statements of the 911 caller were not admitted for the truth of the matter asserted and were not hearsay, Araujo's right of confrontation is not implicated.

## Facts

The trial of this matter was consolidated with an evidentiary hearing on Araujo's motion to suppress. At the trial, Wichita Police Officers Seiler and Crowe testified they were dispatched to a residence in response to a 911 call made by James Lewis.

Lewis was not present during the trial. Both a transcript and a recording of the 911 call were admitted into evidence, and Officers Seiler and Crowe testified about what Lewis told them when they arrived at the residence.

Officer Seiler testified that Lewis stated "a black male, who [Lewis] knew as PJ, was threatening him." Lewis told the officers that PJ was known to carry weapons, specifically guns. While Officer Crowe continued speaking with Lewis regarding the threat, Officer Seiler examined their surroundings in the residence to ensure their safety and, while doing so, noticed a picture of a black male in a nearby photograph. He pointed out the man to Lewis and Lewis indicated the man was PJ. Officer Crowe testified that Lewis told them PJ was the boyfriend of another resident of the house, Tracy Drake. Lewis explained he had been staying at the house for 3 or 4 nights.

When the officers began to testify regarding Lewis' statements, Araujo, through defense counsel, objected to both officers' testimony based on hearsay grounds because Lewis, despite being under subpoena, was absent. During the first officer's testimony, the trial court overruled the objection, ruling that Lewis' statements were "admissible to show this officer's behavior, and they go to the probable cause for talking with [Araujo]." After the objection to the second officer's testimony regarding Lewis' statements, the trial

court found the statements were "admissible to show what the officers did, why they did what they did later." The judge further stated: "I'm not taking [the statements] for the truth of what Mr. Lewis said."

After testifying regarding the conversations with Lewis, the officers testified regarding the events that led to Araujo's arrest and the seizing of the evidence that is subject to the motion to suppress. They explained that at approximately the same time as Lewis was identifying the man in the photograph as PJ, a car, which Officer Seiler recognized as belonging to Drake, pulled into the driveway. Drake got out on the driver's side and started walking to the front door, but when she looked up and saw Officer Seiler, she turned around and retreated toward the car. Seiler then stepped onto the porch and commanded Drake to stop so he could speak with her. Officer Crowe remained inside the house with Lewis.

As Drake turned around, Officer Seiler noticed a black male passenger inside the car. When he pointed his flashlight at the windshield, the officer saw the man place his hand in his pocket and reach under the seat. Focusing his attention on the passenger, Officer Seiler started to approach the car and recognized the man as the person in the photograph that Lewis had used to identify PJ. Seiler ordered the passenger to place his hands where the officer could see them. The man did so momentarily but then reached into his pocket. Seiler pointed his gun at the passenger and ordered him to display his hands. The passenger complied.

Officer Seiler radioed for backup and, when the additional officers arrived, ordered the passenger to step out of the car. Seiler patted him down for weapons. Then, looking inside the vehicle's interior, Seiler saw a plastic bag of marijuana on the passenger seat. This discovery led to Araujo's arrest for possession of marijuana. Officer Seiler also reached under the passenger's seat to scan for a weapon and, instead, discovered a plastic bag of crack cocaine. Ultimately, a search warrant was issued for the house. A safe was located and a crack pipe, cocaine, methamphetamine, and marijuana were found in the safe. When Araujo was booked into jail, he had keys to the house and the safe in his possession.

At the conclusion of the evidence, the trial court made several findings. First, the court found "it more probably true than not true that James Lewis told the officers that this defendant had threatened him" and had identified the defendant in a photograph. The court then recounted the course of events as testified to by the officers, concluding that the officer had "an obligation to check it out" when he saw Tracy Drake and knew the man identified as PJ might be with her. The trial court then found the passenger's behavior was suspicious and consistent with someone hiding guns or drugs and concluded that for the officer's protection, he was justified in searching the defendant. In other words, the court found that Officer Seiler had probable cause to detain and, subsequently, investigate Araujo. The motion to suppress was, therefore, denied. The trial court then turned to the question of Araujo's guilt or innocence and no more mention was made of Lewis' statements. Based upon Araujo's suspicious actions, his proximity to the drugs in the car, and his possession of keys to the house and safe, the court found Araujo guilty of possession of marijuana with intent to sell, possession of cocaine, possession of methamphetamine, and three drug tax stamp violations.

On appeal, Araujo raised the Confrontation Clause issue now before us. The Court of Appeals affirmed his convictions, holding that Lewis' statements were not testimonial and further holding that the statements were not offered for the truth of the matter asserted and, therefore, were not hearsay. *State v. Araujo*, 36 Kan. App. 2d 747, 756-57, 144 P.3d 66 (2006). Araujo petitioned for review, arguing that the statements were hearsay and that statements made to officers in the course of an investigation are testimonial. Based upon these arguments, this court granted Araujo's petition for review. See K.S.A. 60-2101(b); K.S.A. 20-3018(b).

## Analysis

Issues related to the right to confrontation provided by the Sixth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights raise questions of law over which this court exercises de novo review. *State v. White*, 284 Kan. 333,

Syl. ¶ 5, 161 P.3d 208 (2007); *State v. Henderson*, 284 Kan. 267, Syl. ¶ 2, 160 P.3d 776 (2007).

The Sixth Amendment's Confrontation Clause provides that " '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.' " 541 U.S. at 42. This federal principle is applied to the States through the Fourteenth Amendment to the United States Constitution. *Pointer v. Texas*, 380 U.S. 400, 403-06, 13 L. Ed. 2d 923, 85 S. Ct. 1065 (1965). Similarly, a criminal defendant in Kansas has the right to "meet the witness face to face." Kansas Const. Bill of Rights, § 10; see also *State v. Blanchette*, 35 Kan. App. 2d 686, Syl. ¶ 5, 134 P.3d 19, *rev. denied* 282 Kan. 792 (2006), *cert. denied* 127 S. Ct. 1302 (2007) (right of confrontation under federal Constitution and right to meet witnesses face to face under Kansas Constitution are satisfied when defendant has had opportunity to cross-examine witnesses against defendant).

Historically, the United States Supreme Court has held that the Confrontation Clause does not apply when the evidence is *"not hearsay under traditional rules of evidence." Tennessee v. Street*, 471 U.S. 409, 413, 86 L. Ed. 2d 425, 105 S. Ct. 2078 (1985). In *Street*, an accomplice's confession was introduced during the State's rebuttal to establish that the defendant's statement was not coercively derived from the accomplice's statement. The trial court twice instructed the jury that the confession was not to be considered for the purpose of proving the truthfulness of the statement, but for the limited purpose of rebutting Street's testimony that the Sheriff had read from the accomplice's written statement and directed Street to say the same thing. The Supreme Court concluded:

"The *nonhearsay* aspect of [the accomplice's] confession—not to prove what happened at the murder scene but to prove what happened when respondent confessed—raises no Confrontation Clause concerns. The Clause's fundamental role in protecting the right of cross-examination [citation omitted] was satisfied by [the Sheriff's] presence on the stand. If respondent's counsel doubted that [the accomplice's] confession was accurately recounted, he was free to cross-examine the Sheriff. . . . In short, the State's rebuttal witness against respondent was not [the accomplice], but [the Sheriff]." 471 U.S. at 414.

As this analysis indicates, the rationale of the conclusion that the Confrontation Clause is not implicated when evidence is not of-

fered for the truth of the matter asserted is that the declarant is not a "witness" against the accused. See *Crawford*, 541 U.S. at 51; *United States v. Hansen*, 434 F.3d 92, 100 n.9 (1st Cir. 2006); *United States v. Davis*, 890 F.2d 1373, 1380 (7th Cir. 1989).

The decision of the United States Supreme Court in *Crawford* changed several aspects of Confrontation Clause analysis and overruled some prior decisions, holding that the Confrontation Clause bars the introduction of testimonial hearsay against a criminal defendant, unless the declarant is unavailable and the accused has had a prior opportunity to cross-examine the declarant. 541 U.S. at 53-54. However, the *Crawford* Court did not alter the rule that the Confrontation Clause does not apply to nonhearsay evidence. In fact, citing *Street*, the Court noted that even if a statement is testimonial it may still be admissible if it is not hearsay because the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." 541 U.S. at 59 n.9.

This statement rebuts an analysis, suggested in the parties' arguments, that determination of whether the statements are offered for the truth of the matter asserted is an aspect of determining whether the statements are testimonial. The *Crawford* Court referenced "testimonial statements" and stated those statements could be introduced if they were not offered for the truth of the matter asserted. In other words, *Crawford* does not bar testimonial out-of-court statements, it bars testimonial hearsay unless the declarant is unavailable and the accused has had a prior opportunity to cross-examine the declarant.

Post-*Crawford*, several courts have refrained from addressing the testimonial aspect of the analysis when considering statements that were offered for a purpose other than the truth of the matter asserted, concluding the Confrontation Clause is not implicated. See, *e.g.*, *United States v. Paulino*, 445 F.3d 211, 218 (2d Cir. 2006) (testimony admitted to explain course of events); *State v. Smith*, 215 Ariz. 221, 159 P.3d 531 (2007) (coroner's testimony regarding prior report not admitted for truth of the matter); *Jennings v. State*, 285 Ga. App. 774, 776, 648 S.E.2d 105 (2007) (testimony admitted to explain why defendant's photograph was included in photo

lineup); *State v. Walker*, 170 N.C. App. 632, 634-35, 613 S.E.2d 330 (2005) (ballistics report which could have been asserted for truth of matter stated was admitted for a limited purpose). But see *State v. Mason*, 160 Wash. 2d 910, 922, 162 P.3d 396 (2007) (Without citing to the statement in *Crawford* exempting nonhearsay statements from the holding, the court applied the *Crawford* analysis, stating, "[W]e are not convinced a trial court's ruling that a statement is offered for a purpose other than to prove the truth of the matter asserted immunizes the statement from confrontation clause analysis.").

The cases exempting nonhearsay statements from a Confrontation Clause analysis are consistent with the analysis utilized in Kansas. In *State v. Davis*, 283 Kan. 569, 575, 158 P.3d 317 (2007), this court stated: "After [*Davis v. Washington*], the test to determine whether the admission of a *hearsay* statement violates a defendant's rights under the Confrontation Clause turns on whether the statement is testimonial." (Emphasis added.); see also *State v. Adams*, 35 Kan. App. 2d 439, 443-44, 131 P.3d 556 (2006) (concluding statements in case were hearsay, but noting that *Crawford* would not apply if statements were not hearsay). Testimony is not inadmissible as hearsay evidence when it is not offered to prove the truth of the matter asserted. *State v. Francis*, 282 Kan. 120, 148-49, 145 P.3d 48 (2006); K.S.A. 2006 Supp. 60-460 (defining "hearsay" as "[e]vidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated").

In Kansas, statements of dispatchers or informants, offered only to explain the course of action of an investigating officer, have been held admissible as nonhearsay. *State v. Crowley*, 220 Kan. 532, 536-37, 552 P.2d 971 (1976); *State v. Ritson*, 215 Kan. 742, 748, 529 P.2d 90 (1974); *State v. Hollaway*, 214 Kan. 636, 638-39, 522 P.2d 364 (1974); see also *State v. Vontress*, 266 Kan. 248, 253, 970 P.2d 42 (1998) (if an out-of-court statement is offered "merely for the purpose of establishing what was then said, and not for the purpose of establishing the truth of the statement, the statement is not hearsay").

Here, it is not necessary to engage in an extensive analysis of whether Lewis' statements were offered for the truth of the matter stated because the trial court indicated the limited purpose for which the evidence was admitted. K.S.A 60-406 recognizes evidence inadmissible for one purpose can be admissible for a limited purpose, stating: "When relevant evidence is admissible as to one party or for one purpose and is inadmissible as to other parties or for another purpose, the judge upon request shall restrict the evidence to its proper scope and instruct the jury accordingly." In making the findings in this case, the trial court, while simultaneously considering the motion to suppress and conducting the trial, found the evidence admissible to determine whether the officers had probable cause for talking with Araujo. Moreover, in making findings, the trial court relied upon the statements that the officers were justified in making contact with Araujo because of the reported assault. Specifically, the trial court stated that "because of what Mr. Lewis told [the officer], [the officer] has an affirmative duty to investigate an assault, and he also has a duty to protect himself from someone who might be carrying a weapon." The trial court, when making findings relating to the defendant's guilt, did not reference Lewis' statements; rather, the court relied upon Araujo's proximity to the drugs in the car and upon Araujo's possession of keys to the house and safe where other drugs were found.

Thus, for the purposes for which the evidence was admitted—to establish whether the officers were justified in detaining Araujo—the witnesses against Araujo were the officers, not Lewis. Whether Araujo actually assaulted Lewis is of no probative value. What was at issue was whether Lewis had told the officers that Lewis had threatened him and identified Araujo as the suspect. The officers were available for cross-examination on whether these statements were made. Also, it does not matter that Lewis' statements might have been used to prove the truth of several aspects of what was stated—*e.g.*, who was staying at the house and, therefore, circumstantially was linked to items in the household—because the trial court properly admitted the evidence for a limited, permissible nonhearsay purpose.

Thus, that portion of the Court of Appeals' decision concluding the statements were not hearsay is affirmed. From that point, the Court of Appeals' analysis of whether the statements were testimonial is dicta. Because the Confrontation Clause does not apply to nonhearsay statements, it does not matter whether the statements were testimonial, and we refrain from discussing this issue.

Affirmed.

DAVIS and JOHNSON, JJ., not participating.

BRAZIL, S.J., and MCANANY, J., assigned.