NOT DESIGNATED FOR PUBLICATION

Nos. 120,468
120,474

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

STEVEN ANTHONY HART,
*Appellant*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; THOMAS DAWSON, judge pro tem. Opinion filed December 6, 2019. Affirmed.

*Benjamin N. Casad*, of Leavenworth, for appellant.

*Bryanna R. Hanschu*, assistant county attorney, *Todd Thompson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., MALONE and POWELL, JJ.

PER CURIAM:  Steven Anthony Hart appeals his convictions of four counts of violating a protective order. Hart argues his convictions should be overturned because (1) the evidence was insufficient to support his convictions; (2) the convictions were multiplicitous; and (3) his right to confront the witnesses against him was violated. After a careful review of the record, we find no error and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Hart and Haskell Hart are brothers. Haskell lived alone in his apartment, but Jessica Tripp was often with Haskell as she was Haskell's supported living coach due to Haskell's developmental disability. Prior to the incidents in this case, Haskell and Tripp obtained protective orders against Hart because of Hart's continued harassment of Haskell.

Hart was charged in case 17CR845 with three counts of violation of a protective order for his conduct on November 20, 2017. Later, Hart was charged in a new case, 18CR49, with an additional count of violation of a protective order for his conduct on December 1, 2017. The cases were tried together before the district court.

At trial, the district court took judicial notice of the protective orders previously issued against Hart for Haskell and Tripp. Although the actual protective orders are not in the record, according to the testimony, these orders prohibited Hart from being in the same location as Haskell and Tripp and prohibited Hart from entering Haskell's apartment. The district court also took judicial notice that Hart was served with these protective orders on October 27, 2017.

On November 20, 2017, Haskell and Tripp returned to Haskell's apartment after grocery shopping. Tripp was not positive of the exact date because "[t]here were several different situations." When they walked into Haskell's apartment, they saw Hart in the apartment having sex with multiple women on Haskell's bed. Hart ran out of the house when he saw Haskell and Tripp, and Tripp called the police.

As to the events on December 1, 2017, Tripp testified that she did not remember exactly what happened but she remembered that Hart was at Haskell's apartment. Tripp indicated that her statement in the police report about the incident would be accurate.

Officer Derek Garver testified for the State. Garver was present when Hart was served with the protective orders and was made aware that the protective orders covered Haskell's apartment. Garver also was on duty on November 20, 2017, and was dispatched to Haskell's apartment that day after the second incident. When Garver arrived at Haskell's apartment, Tripp informed him that when she arrived at Haskell's residence, Haskell told her that Hart had just run out the back door.

On December 1, 2017, Garver was on patrol near Haskell's apartment when he noticed Hart attempting to enter Haskell's apartment. Garver observed Hart walk onto the porch and shake the door handle. Garver arrested Hart for violating a protective order.

Hart testified in his own defense. Hart had no recollection of contacting Haskell on November 20, 2017, and testified he was not at Haskell's apartment that day. Hart acknowledged that Garver arrested him in the parking lot of Haskell's apartment complex on December 1, 2017. Hart testified Haskell gave Hart a key to his apartment on September 24, 2017, and Hart lived with Haskell for about a month but left when the protective order was issued. Hart admitted that he had moved out of Haskell's apartment before December 1 but claimed he was at the apartment complex to see someone else.

The district court found Tripp and Garver's testimony to be substantially correct and any contrary testimony to be untrue. The district court found Hart guilty in both cases of four counts of violating a protective order and sentenced Hart to 12 months in jail for each count but ran the sentences concurrently for a total of 12 months in jail.

Hart timely appeals.

I.      WAS THERE SUFFICIENT EVIDENCE TO SUSTAIN HART'S CONVICTIONS?

In his first issue on appeal, Hart argues there was insufficient evidence to support his convictions. Hart claims Tripp was confused about the dates in her testimony and unsure if Hart was even at Haskell's apartment.

"'When the sufficiency of the evidence is challenged in a criminal case, [we ask] whether, after reviewing all the evidence in a light most favorable to the prosecution, [we] are convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt.'" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018). In making this determination, "[we] do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations." *State v. Lloyd*, 299 Kan. 620, 632, 325 P.3d 1122 (2014). A guilty verdict can be based only on circumstantial evidence and any inferences reasonably deduced from that evidence. See *State v. Rosa*, 304 Kan. 429, 433, 371 P.3d 915 (2016). A guilty verdict is typically upheld except "in rare cases when the court determines that evidence was so incredulous no reasonable fact-finder could find guilt beyond a reasonable doubt." *State v. Torres*, 308 Kan. 476, 488, 421 P.3d 733 (2018).

For sufficient evidence to exist, each element of an offense must be supported. See *Chandler*, 307 Kan. at 669. In order for Hart to be found guilty of violating a protective order, the State was required to prove a protective order existed and Hart knowingly violated it. See K.S.A. 2018 Supp. 21-5924(a).

The district court took judicial notice that protective orders were issued against Hart on behalf of Haskell in 17DM915 and Tripp in 17DM914 and that the orders were served on Hart on October 27, 2017. Hart did not object to either instance of judicial notice. Because the district court took judicial notice of the protective orders, the orders and their terms were not entered into evidence and are thus not in the record. But a

4

review of the record provides evidence that the protective orders prohibited Hart from contacting Haskell or Tripp and prohibited him from being at Haskell's apartment.

From the record, it appears the first three convictions arise from two separate incidents which occurred on November 20, 2017. The first incident occurred when Haskell and Tripp returned to Haskell's apartment from the grocery store to find Hart in Haskell's bed having sex with multiple women. According to Tripp's testimony, when Hart saw Haskell and Tripp, Hart ran out of the apartment. Although Tripp was not entirely positive the events occurred on November 20, 2017, she was able to remember the details of the incidents. Tripp testified to seeing Hart in Haskell's apartment, and both Haskell and she were present at the same time in the same location as Hart.

The third conviction arises from a separate incident later on November 20. Garver testified that he was called to Haskell's address for a violation of a protective order. Tripp informed Garver that she learned from Haskell that Hart was at his apartment again. When Tripp arrived at the apartment, Haskell told her Hart had just run out the back door.

As to the fourth conviction, Garver testified that on December 1, 2017, while he was on routine patrol, he observed Hart walk up on the porch, walk up to the door, and start shaking the door handle. Hart admitted to being arrested in the parking lot but claimed Haskell no longer lived in the apartment.

Hart argues Tripp's testimony was not credible. But the district court explicitly found Tripp and Garver's testimony credible, and we do not reweigh evidence or determine witnesses' credibility. See *Lloyd*, 299 Kan. at 632. A review of the evidence shows the existence and terms of the protective orders as well as service of those orders. Tripp and Garver's testimony establish that Hart was in Haskell's apartment and made contact with Haskell and Tripp. This evidence is sufficient for a reasonable fact-finder to

find Hart guilty as charged to the three counts of violating a protective order in 17CR845 beyond a reasonable doubt.

As to the final count, Garver witnessed Hart attempting to enter Haskell's apartment and testified that law enforcement made very clear to Hart that he was not to enter Haskell's apartment. Sufficient evidence exists for a reasonable fact-finder to find Hart guilty as charged in 18CR49 to one count of violating a protective order.

## II.     WERE THE CHARGES MULTIPLICITOUS?

Hart's second argument is the three criminal convictions in 17CR845 are multiplicitous. Hart claims the convictions are multiplicitous because one act was used to sustain three separate convictions under the same statute. The State counters the convictions are not multiplicitous because Tripp was the victim in one charge and Haskell was the victim of the other two charges, with each act underlying the convictions occurring at a different time on November 20, 2017.

Whether convictions are multiplicitous is a legal question subject to de novo review. *State v. Schoonover*, 281 Kan. 453, 462, 133 P.3d 48 (2006). The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights utilize the same test to determine whether a defendant has been convicted of multiple violations of the same offense: "whether there is more than one conviction for the allowable unit of prosecution." 281 Kan. at 496. The test contains two elements, both of which must be satisfied for a double jeopardy violation to exist: "(1) Do the convictions arise from the same conduct? and (2) By statutory definition are there two offenses or only one?" 281 Kan. at 496.

6

A.    *Do the convictions arise from the same conduct?*

"If the conduct is discrete, *i.e.*, committed separately and severally, the convictions do not arise from the same offense and there is no double jeopardy violation. If the charges arises from the same act . . . , the conduct is unitary." 281 Kan. at 496. Unitary conduct is determined by

> "(1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct." 281 Kan. at 497.

As to Hart's three convictions in 17CR845, Hart and the State disagree on what conduct the charges cover. Hart claims the three convictions were for (1) the property itself; (2) Tripp's protective order; and (3) Haskell's protective order—all arising from when Tripp and Haskell returned from the grocery store to find Hart in Haskell's apartment. The State, on the other hand, asserts two of the charges stemmed from Hart being in Haskell's apartment when Tripp and Haskell returned from the grocery store and the third charge arose from later in the day when Tripp returned to Haskell's apartment and Haskell informed her that Hart had been in his apartment.

From a review of the record, the State appears to be correct. Tripp testified that Hart was in Haskell's apartment when they returned home from the grocery store. Later, Haskell told Tripp that Hart was in his apartment again, and Tripp called the police. Thus the three convictions in 17CR845 were for (1) Hart violating Haskell's protective order when Haskell returned from the grocery store; (2) Hart violating Tripp's protective order when Tripp returned from the grocery store; and (3) Hart violating Haskell's protective order when he returned to Haskell's apartment later in the day.

7

The record does not reflect how much time passed before Hart returned to Haskell's apartment—thereby committing the third violation. It was later in the day because Tripp had left Haskell's apartment, and Haskell informed Tripp of Hart's presence in his apartment when she returned. Both acts occurred at the same place on November 20—Haskell's apartment. But there was an intervening event between the two acts. Hart left Haskell's apartment after Tripp and Haskell returned and called the police. Hart returned later that day. Hart's return was motivated by a fresh impulse—after leaving Haskell's apartment because of the protective order, Hart decided to return later while Haskell was in the apartment. The third violation arose out of different conduct than the earlier violation of Haskell and Tripp's protective orders. The conduct is not unitary. The conviction for the third violation on November 20 was not multiplicitous.

Hart's remaining two violations of Haskell and Tripp's protective orders occurred at the exact same time—when Haskell and Tripp returned from the grocery store— and at the same location—Haskell's apartment. There was no intervening event or fresh impulse, so the first *Schoonover* prong is satisfied.

B.     *Are there multiple offenses or only one?*

The second prong of *Schoonover*'s double jeopardy test requires us to ask:  "How has the legislature defined the scope of conduct which will comprise one violation of the statute? . . . [T]he statutory definition of the crime determines what the legislature intended as the allowable unit of prosecution. There can be only one conviction for each allowable unit of prosecution." 281 Kan. at 497-98. Determining a unit of prosecution "is not necessarily dependent upon whether there is a single physical action or a single victim"; there could be a separate conviction for each victim if authorized by the Legislature. 281 Kan. at 472.

Under K.S.A. 2018 Supp. 21-5924(a)(1), a violation of a protective order occurs when the defendant knowingly violates a protection from abuse order. Under K.S.A. 2018 Supp. 21-5924(a)(6), a violation of a protective order occurs when the defendant knowingly violates a protection from stalking, sexual assault, or human trafficking order. Whether analyzed under (a)(1) or (a)(6), the analysis does not change. The plain language of the statute makes clear that the Legislature intended a violation to occur each time a protective order was knowingly violated.

The State admits that the complaints allege the protective orders were for protection from abuse under K.S.A. 2018 Supp. 21-5924(a)(1) when they should have alleged the orders were for protection from stalking under K.S.A. 2018 Supp. 21-5924(a)(6). However, the error on the charging document was harmless because violations of protection from abuse orders and violations of protection from stalking orders both arise from K.S.A. 2018 Supp. 21-5924(a). See *State v. Dunn*, 304 Kan. 773, 811-12, 375 P.3d 332 (2016). In any event, because Hart does not address why his claim should be heard for the first time on appeal, Hart has waived any challenge to that error. See *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013).

Here, two protective orders existed—one for Haskell and one for Tripp—and Hart knew of the orders. When Haskell and Tripp returned to Haskell's apartment to find Hart inside, Hart committed two separate violations. He violated Haskell's protective order and he violated Tripp's protective order. The language of the statute provides that the allowable unit of prosecution is the violation of a protective order. By violating two protective orders, there were two allowable units of prosecution. As such, the convictions for violating Haskell's protective order and Tripp's protective order were not multiplicitous.

9

III.    WAS HART'S RIGHT TO CONFRONTATION VIOLATED?

Hart's final argument is that his right under the Confrontation Clause of the Sixth Amendment to the United States Constitution was violated. Hart argues the judicial notice of the protective orders included affidavits or ex parte in-court testimony from Haskell, which were testimonial in nature. Because an affidavit and ex parte testimony are testimonial, Hart argues he should have had an opportunity to cross-examine Haskell. Hart claims Haskell's testimony could have clarified several factual issues regarding the case. The State asserts this issue was not preserved for appeal because Hart did not object during the trial to statements regarding whether Hart violated the protective order. We agree.

When raising a Confrontation Clause violation, the failure by the defendant to timely object precludes appellate review. *State v. Araujo*, 36 Kan. App. 2d 747, 751, 144 P.3d 66 (2006), *aff'd* 285 Kan. 214, 169 P.3d 1123 (2007). "K.S.A. 60-404 provides that no verdict shall be set aside based upon the erroneous admission of evidence unless an objection was 'timely interposed and so stated as to make clear the specific ground of objection.'" *State v. Belone*, 51 Kan. App. 2d 179, 197, 343 P.3d 128, *rev. denied* 302 Kan. 1012 (2015). "[A]ppellants asserting Confrontation Clause challenges may not circumvent K.S.A. 60-404, otherwise the exceptions would devour the statutory rule." *In re Care & Treatment of Thomas*, 301 Kan. 841, 845, 348 P.3d 576 (2015). We generally do not review "an evidentiary issue without a timely and specific objection even if the issue involves a fundamental right. Additionally, . . . '[t]he defendant *always* has the burden of raising a Confrontation Clause objection' and . . . '[s]tates are free to adopt procedural rules governing objections.' *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 327, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009)." *State v. Dukes*, 290 Kan. 485, 488-89, 231 P.3d 558 (2010).

As the State notes, Hart did not object during the trial to any testimony from Tripp or Garver regarding information Haskell told Tripp about whether Hart violated the protective orders. Hart also did not object to the district court taking judicial notice of the protective orders or service of the orders to Hart. Hart's failure to object to the judicial notice of the protective orders or Tripp and Garver's testimony waived his Confrontation Clause argument.

Affirmed.